UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PACIFIC COAST FEDERATION OF
FISHERMEN'S ASSOCIATIONS, *et al.*,

    Plaintiffs,

vs.

DONALD GLASER, Regional Director of
U.S. Bureau of Reclamation, U.S. BUREAU
OF RECLAMATION; and, SAN LUIS &
DELTA-MENDOTA WATER AUTHORITY,

    Defendants.

No. CIV S-11-2980-KJM-CKD

ORDER

/

        Pacific Coast Federation of Fishermen's Associations, California Sportfishing Protection Alliance, Friends of the River, San Francisco Crab Boat Owners, Institute for Fisheries Resources, and Felix Smith (collectively, "plaintiffs") bring this action under the Citizen Suit Provision of the Clean Water Act, 33 U.S.C. § 1251, *et seq*. ("Clean Water Act" or "CWA"). (Compl. ¶ 2, ECF 2.) Plaintiffs allege that the Grasslands Bypass Project, jointly administered by Donald Glaser, Regional Director of U.S. Bureau of Reclamation, U.S. Bureau of Reclamation ("federal defendants"), and San Luis & Delta-Mendota Water Authority (the "Authority") (together with federal defendants, "defendants"), illegally discharge polluted water into San Luis Drain and Mud Slough, two waterways that are covered by the Clean Water Act. (Compl.¶¶ 3–5.) Plaintiffs

contend that this discharge violates the CWA because the Grasslands Bypass Project is a point source for which defendants have failed to obtain a National Pollutant Discharge Elimination System ("NPDES") permit. The central dispute before the court is whether the project's long established method of channeling waters through a subsurface tile system may render that system a "point source" under the CWA. The Authority moves to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), respectively, and federal defendants move for judgment on the pleadings under Rule 12(c).[1] (ECF 21.) At hearing on April 27, 2012, Stephan Volker appeared for plaintiffs; Martin McDermott, United States Department of Justice, appeared for the federal defendants; and Eric Buescher of Cotchett, Pitre and McCarthy appeared for the Authority. As discussed below, the court finds that, based on the text and history of the return flows exclusion, plaintiffs have adequately stated a claim at this stage of the litigation. Therefore, the Authority's motion to dismiss is denied. The federal defendants' motion for judgment on the pleading is denied as premature.

I.  FACTUAL ALLEGATIONS

The Grasslands Bypass Project (the "Project") is jointly administered by the federal defendants and the Authority. (Compl. ¶ 3.) The Project uses a tile drainage system that consists of a network of perforated drain laterals underlying farmlands in California's Central Valley that catch irrigated water and direct it to the San Luis drain and from there to Mud Slough. (*Id*. ¶¶ 4–5, 26–28, Ex. A.) The San Luis drain and Mud Slough each are navigable waters under the CWA. (*Id*. ¶ 5.) In addition to catching irrigation water, the perforated tiles serve another, equally important agricultural purpose: they catch and drain groundwater that would otherwise rise above the tiles and reach the root zone of crops. (*See id*., Ex. 1 at 15.) The groundwater is contaminated with naturally-occurring selenium, among other pollutants. (*Id*. ¶ 26.) Plaintiffs allege that this purposeful collection of contaminated groundwater, unrelated to the application of surface water to the land,

---

[1] The federal defendants' motion was submitted on the papers prior to argument under Local Rule 230. The court heard argument only on the Authority's motion.

2

and its direction to Mud Slough and the San Luis drain without an NPDES permit, violates the CWA. (*Id.* ¶ 5.)

II.     MOTION TO DISMISS

The Authority moves to dismiss the complaint under Rule 12(b)(1) for lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim.[2]

A.      Legal Standards

1.      Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and, until proven otherwise, cases lie outside the jurisdiction of the court. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377–78 (1994). Lack of subject matter jurisdiction may be challenged by either party or raised *sua sponte* by the court. FED. R. CIV. P. 12(b)(1); FED. R. CIV. P. 12(h)(3); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1983). A Rule 12(b)(1) jurisdictional attack may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the complaint is challenged as failing to establish federal jurisdiction, even assuming all the allegations are true
/////

---

[2] The Authority also claims that the court lacks jurisdiction because plaintiffs' claims should have been brought under 33 U.S.C. § 1369(b). Section 1369(b) provides that certain actions of the EPA Administrator are reviewable only by the Court of Appeals and within a specific time of the action. Here, the Authority points to two actions by the EPA that it suggests preclude federal jurisdiction: (1) passing regulations in 1983 that address return flows, and (2) treating the project as a non-point source since its inception. In support of its second contention, the Authority requests judicial notice of documents related to the project's long regulated history. Regarding the first, as set forth below, the court finds the regulations do not clearly exempt tile drainage systems. Regarding the second, the court is unpersuaded, as plaintiffs challenge the EPA's failure to enforce the CWA's permitting requirements; that challenge is not defeated merely because the EPA, or its state counterpart, considers the project to be a non-point source. *See San Francisco Baykeeper v. Cargill Salt Div.*, 481 F.3d 700, 706 (9th Cir. 2007) ("[W]e have held that a court may, in entertaining a citizen suit, decide whether a discharge of particular matter into navigable waters violates the CWA even though the regulating agency determined that the discharge was not subject to the requirement of a permit."); *Ass'n to Protect Hammersley, Eld, and Totten Inlets v. Taylor Resources, Inc.*, 299 F.3d 1007, 1012 (9th Cir. 2002) ("Although the EPA or an authorized state agency may be charged with enforcement of the Clean Water Act, neither the text of the Act nor its legislative history expressly grants to the EPA or such a state agency the exclusive authority to decide whether the release of a substance into the waters of the United States violates the Clean Water Act.").

and construing the complaint in the light most favorable to plaintiff. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

By contrast, in a factual attack, the challenger provides evidence that an alleged fact is false, or a necessary jurisdictional fact is absent, resulting in a lack of subject matter jurisdiction. *Id.* In these circumstances, the allegations are not presumed to be true and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).[3]

Jurisdictional dismissal is "exceptional" and warranted only "'where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous.'" *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). The Ninth Circuit has held that "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action.'" *See Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). "Normally, the question of jurisdiction and the merits of an action will be considered intertwined where . . . a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive

---

[3] The Authority claims to be offering a facial challenge to jurisdiction while offering exhibits relevant to disputed facts. The court finds that the materials for which the Authority seeks judicial notice are immaterial to the present motion and therefore denies the requests.

claim for relief." *Id*. (quotation omitted).  Where a jurisdictional attack is mounted against a claim that implicates statutory interpretation, the court should refrain from dismissing where an interpretation is available that supports jurisdiction. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (". . . the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.'" (quoting *Bell*, 327 U.S. at 685 (1946)); *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090 (9th Cir. 2008).

    2.  Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," (FED. R. CIV. P. 8(a)(2)), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the–defendant–unlawfully–harmed–me accusation" or "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Ultimately, the inquiry
/////

focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" (*Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555)), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or as a matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks School of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

B.   Analysis

Congress enacted the Clean Water Act, 33 U.S.C. § 1251, *et seq.* ("Clean Water Act" or "CWA") to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" through limiting pollution from "point sources." *N'wst Env. Def. Center v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011) ("Brown"). "A cornerstone of the Clean Water Act is that the 'discharge of any pollutant' from a 'point source' into navigable waters of the United States is unlawful unless the discharge is made according to the terms of an [National Pollutant Discharge Elimination System ("NPDES")] permit obtained from either the United States Environmental Protection Agency ("EPA") or from an authorized state agency." *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res.*, 299 F.3d 1007, 1009 (9th Cir. 2002).

/////

An NDPES permit is required for any polluted discharge. *See* 33 U.S.C. §§ 1311(a), 1342. The term "discharge" is a term of art under the CWA that presumes the presence of a "point source." 33 U.S.C. § 1362(12).[4] Therefore, an NPDES permit is not required for a non-point source. In this case, the primary disagreement between the parties is whether the underground tile drainage system utilized by defendants is a point source or nonpoint source. Although not defined, "nonpoint source pollution is . . . widely understood to be the type of pollution that arises from many dispersed activities over large areas, and is not traceable to any single discrete source. Because it arises in such a diffuse way, it is very difficult to regulate through individual permits." *League of Wilderness Defenders v. Forsgren*, 309 F.3d 1181, 1184 (9th Cir. 2002). By comparison, the CWA defines a "point source" as follows:

> Any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural stormwater discharges and *return flows from irrigated agriculture*.

33 U.S.C. § 1362(14) (emphasis added). Defendants claim their tile drainage system falls within the statutory irrigation returns flow exemption.

In addition to this definitional exclusion for irrigation return flows, Congress reiterated the exclusion when addressing NPDES permitting: "The Administrator shall not require a permit under this section for discharges composed entirely of return flows from irrigated agriculture . . . ." 33 U.S.C. § 1342(l)(1). Finally, the irrigation return flows exception is addressed in the regulations issued by the EPA. *See* 40 C.F.R. § 122.3(f); *see also* 40 C.F.R. § 122.3(e) (excluding from NPDES permitting "[a]ny introduction of pollutants from non point-source

/////

---

[4] The Authority argues that plaintiffs' complaint fails to state a claim because the averments include legal conclusions; however, plaintiffs' use of legal terms of art is not inherently conclusory. The court finds the allegations are clear regarding the factual basis and legal basis for the claim presented.

7

agricultural and silvicultural activities, including storm water runoff from orchards, cultivated crops, pastures, range lands, and forest lands . . . .").

### 1. Subject Matter Jurisdiction

With respect to the Authority's challenge to this court's subject matter jurisdiction, the court finds that plaintiffs' proffered interpretation of the return flows exception is at least feasible. The court thus is constrained from dismissing the action for lack of subject matter jurisdiction. *See, e.g., Steel Co. v.*, 523 U.S. at 90 ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case."); *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969 (9th Cir. 2012) (holding that the district court improperly dismissed for lack of jurisdiction based on a debatable statutory construction). Plaintiffs' claim is not frivolous and there is nothing to indicate it is pled simply to obtain federal jurisdiction; therefore, plaintiffs' colorable interpretation of the point source definition controls at this phase of the proceedings. *Bell*, 550 U.S. at 685. The Authority's motion to dismiss for lack of subject matter jurisdiction is therefore denied.

### 2. Failure to State a Claim

It may still be the case that, as a matter of law, the complaint fails to state a claim. *Cf. Williston Basin*, 524 F.3d at 1096 (finding the district court erroneously dismissed for lack of subject matter jurisdiction but affirming the result for plaintiff's failure to state a claim). Both parties highlight aspects of the irrigation return flows legislative history as support for their proffered interpretation. Initially, Congress considered exempting irrigated farmlands from the point source definition, however, this exemption was rejected in the House. *See Brown*, 640 F.3d at 1072–73. The EPA nevertheless chose to exempt return flows from farmlands less than 3000 acres in its implementing regulations. *Id.*; *see* 40 C.F.R. § 125.4 (1975). These initial point source regulations passed by the EPA included an explanatory parenthetical accompanying its return flow exemption, stating it included "( . . . tailwater, *tile drainage*, surfaced ground water flow or bypass water)." 40

8

1  C.F.R. § 125.4 (j)(4) (1975) (emphasis added). Defendants rely on this singular occurrence of "tile
2  drainage" in conjunction with return flow in that initial regulation to suggest that tile drainage
3  systems are included by statute in the definition of irrigation return flows. However, outside of this
4  usage, there is little that confirms the Authority's reading.

5  The National Resources Defense Council, Inc. ("NRDC") challenged the initial
6  exclusion when it was enacted, as exceeding the EPA's authority; the district court hearing the
7  challenge agreed. *See Natural Res. Def. Council v. Train*, 396 F. Supp. 1393 (D.D.C.1975), *aff'd*
8  *sub nom*, *Natural Res. Def. Council v. Costle*, 568 F.2d 1369 (D.C. Cir. 1977). In *Train*, the court
9  held that while the EPA was empowered to distinguish point sources from nonpoint sources, it could
10 not wholesale exclude a class of point sources that were covered by the statutory language. *Id*. at
11 1400–01 ("the statutory framework now at issue appears too tightly drawn to allow the interpretation
12 made by EPA"). While that case was being appealed, the EPA issued regulations reversing its
13 earlier position and applying the NPDES permitting requirements to agricultural activities. *See* 41
14 Fed. Reg. 28,493–28,496 (July 12, 1976); *see also Brown*, 640 F.3d at 1074 ("While the appeal was
15 pending, EPA grudgingly promulgated revised regulations."). In the revised regulations, the EPA
16 defined "irrigation return flow" as "surface water, other than navigable waters, containing pollutants
17 which result from the controlled application of water by any person to land used primarily for crops,
18 forage growth, or nursery operations." 40 C.F.R. §125.53(a)(2) (1976). "Surface water" in turn, was
19 defined as "water that flows exclusively across the surface of the land from the point of application
20 to the point of discharge." 40 C.F.R. § 125.53(a)(3) (1976). The District of Columbia Court of
21 Appeals ultimately affirmed the district court decision a year later. *See Costle*, 568 F.2d at 1369.

22 Congress responded to the appellate decision in *Costle* by writing the irrigation
23 return flow exemption into the CWA. *Brown*, 640 F.3d at 1085 ("[I]n 1977, Congress exempted
24 return flows from irrigated agriculture to alleviate the EPA's burden in having to permit 'every
25 source or conduit returning water to the streams from irrigated lands' . . . ."). The accompanying
26 Senate report, like the revised regulations, suggests that only surface water was contemplated as

9

covered by the amendment: "These [irrigation return] flows have been defined by the Environmental Protection Agency as conveyances carrying surface irrigation return as a result of the controlled application of water by any person to land used primarily for crops . . . ." S. Rep. No. 95-370 (1977) reprinted in 1977 U.S.C.C.A.N. 4326, 4360. This most recent history leading to enactment of the irrigation return flows exemption focuses expressly on surface water and noticeably omits any reference to groundwater or subsurface drainage. This accords with the colloquial use of the term "irrigation," which is generally understood to refer to the application of water to crops, not the drainage of excess groundwater from crop root zones. A dictionary definition contemporaneous with the passage of the irrigation flow exception defines irrigation as "[t]he action or process of . . . artificial watering of land (as by canals, ditches, pipes or flooding) to supply moisture for plant growth. . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1196 (1976). Here, plaintiffs allege that the tile drainage system is used to drain polluted groundwater before it reaches the root zone of crops. On a fully developed record, drainage may be determined to be part of the irrigation process; at the pleading stage, however, where the court must make every inference in favor of plaintiff, the court finds the statutory text and legislative history do not preclude plaintiffs' claims from moving forward.

Lastly, the Authority relies on two cases for support: *Hiebenthal v. Meduri Farms*, 242 F. Supp. 2d 885 (D.Or. 2002) and *Fisherman against the Destruction of the Environment v. Closter Farms*, 300 F.3d 1294 (11th Cir. 2002). Each case is distinguishable for purposes of the present motion. In *Hiebenthal*, the court held it lacked subject matter jurisdiction where plaintiffs alleged defendant irrigated its fields using water from dehydrated fruit in a larger quantity than was necessary. 242 F. Supp. 2d at 887–88. There, all the water was applied as surface water to irrigate crops and that water was preserved for irrigation purposes. *Id*. By contrast, here, plaintiff avers that the tile system drains water unrelated to the application of irrigation water.

In *Closter Farms*, the court held that where a sugar cane farm directed irrigation overflow into neighboring Lake Okeechobee, "[a]ll of the water that has seeped into the canals from

Lake Okeechobee, either above or below ground, has been used in the irrigation process and therefore discharging it back into the lake is a 'return flow.'" 300 F.3d at 1297. In *Closter Farms*, the court made this finding on the basis of an extensive record developed at trial after examining the method of irrigation used and the contents of the water flowing back into the lake. *Id*. Here, defendants ask the court to apply a per se rule that a conveyance used for irrigation is a nonpoint source regardless of what other waters pass through that conveyance. Such a rule would go far beyond the D.C. Circuit's holding in *Closter Farms*.

At the pleading stage, plaintiffs allege that the subsurface tiles are used for two purposes, irrigation and drainage, and that drainage waters unrelated to irrigation are purposefully directed to navigable waters of the United States without an NPDES permit. Neither *Closter Farms* nor *Hiebenthal* address the status of conveyances designed to catch both surface irrigation as well as polluted groundwater.

Based on the language of the exclusion, legislative history and applicable case law, the court cannot conclude at this phase of the proceedings that intentional drainage of contaminated groundwater is subsumed in the irrigation return flows exemption. The Authority's motion to dismiss is denied. The Authority shall file an answer within 21 days of this order.

III.   MOTION FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) provides, "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." "Courts confronting the issue have generally accepted the proposition that, where an action names multiple defendants, the pleadings are not closed until all defendants have answered." *Watson v. County of Santa Clara*, No. C-06-04029 RMW, 2007 WL 2043852, at *1 (N.D. Cal. July 12, 2007); *see also* William A. Schwarzer, A. Wallace Tashima & James Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* § 9:324 (2001); *cf. Doe v. United States*, 419 F.3d 1058, 1061–62 (9th Cir. 2005) (noting that the pleadings are closed for purposes of Rule 12(c) after all pleadings allowed by Rule 7 have been filed). Here, the Authority has yet to file an answer and therefore the pleadings

are not closed.  As such, federal defendants' motion is denied as premature, without prejudice.

        IT IS SO ORDERED.

DATED:  August 30, 2012.

_____
UNITED STATES DISTRICT JUDGE