1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11  PACIFIC COAST FEDERATION OF              No. CIV S-2:11-2980-KJM-CKD
    FISHERMEN'S ASSOCATIONS, et al.,
12
                    Plaintiffs,
13                                            ORDER
            v.
14
    DAVID MURILLO, Regional Director of
15  U.S. Bureau of Reclamation, U.S.
    BUREAU OF RECLAMATION, and SAN
16  LUIS & DELTA-MENDOTA WATER
    AUTHORITY,
17
                    Defendants.
18

19

20          Before the court are two motions to dismiss.  The first is brought by defendants

21  David Murillo and the U.S. Bureau of Reclamation ("federal defendants").  (ECF 76.)  The

22  second is brought by defendant San Luis & Delta-Mendota Water Authority (the "Authority").

23  (ECF 77.)  The court held a hearing on January 17, 2014, at which Martin McDermott appeared

24  for federal defendants, Eric Buescher appeared for the Authority, and Stephen Volker appeared

25  for plaintiffs.  For the following reasons, both motions to dismiss are GRANTED in part and

26  DENIED in part.

27  /////

28  /////

                                              1

I.       BACKGROUND

This case already has progressed through several rounds of dispositive motions. Accordingly, the court sets forth below only that background necessary to resolve the instant motions.

The controversy in this case is whether discharges of polluted water by the Grasslands Bypass Project (the "Project"), jointly administered by defendants, require a National Pollutant Discharge Elimination System ("NPDES") permit under the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq*.  That determination hinges solely upon whether the Project falls under an exclusion to the CWA's NPDES permitting requirement: "The Administrator shall not require a permit under this section for discharges composed *entirely of return flows from irrigated agriculture . . . .*"  33 U.S.C. § 1342(l)(1) (emphasis added).[1]  Plaintiffs' single claim in this case is that the Project is not covered by this exclusion and therefore violates the CWA because it operates without a NPDES permit.  (First Am. Compl. ¶ 46 ("FAC"), ECF 71.)

On September 16, 2013, this court denied federal defendants' and plaintiffs' cross-motions for judgment on the pleadings.  (ECF 70 ("Order").)  Federal defendants argued in their motion that they were entitled to judgment because the Project's discharges are "return flows from irrigated agriculture," while plaintiffs contended in their motion that these discharges did not fall under the plain language of this exemption.  This court found that Congress, in exempting from the permitting requirement those discharges composed "entirely of return flows from irrigated agriculture," intended to exempt "discharges from irrigated agriculture that do not contain additional discharges unrelated to crop production."  (*Id.* at 21.)  Because the parties did not agree in their pleadings whether some or no amount of the Project's discharges were unrelated to crop production, the court had no basis to grant either party judgment on the pleadings.  (*Id.* at 25–26.)  Instead, the court converted federal defendants' 12(c) motion into a 12(b)(6) and dismissed plaintiffs' complaint without prejudice because plaintiffs did not plead adequate facts

_____

[1] The irrigation return flows exception also exists in the CWA's definition of "point source."  33 U.S.C. § 1362(14) ("This term does not include agricultural stormwater discharges and return flows from irrigated agriculture.").

2

1   to sustain a claim that some amount of the Project's discharges is unrelated to crop production.

2   (*Id.* at 26.)

3           Plaintiffs filed their first amended complaint on October 7, 2013.  (ECF 71.)

4   Federal defendants and the Authority filed their motions to dismiss on November 15, 2013.

5   (ECFs 76, 77.)  Plaintiffs opposed on January 3, 2014.  (ECFs 80, 82.)  Defendants replied on

6   January 10, 2014.  (ECFs 83, 84.)

7   II.       STANDARD

8           Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

9   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

10   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

11   under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

12   1990).

13           Although a complaint need contain only "a short and plain statement of the claim

14   showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

15   to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

16   claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

17   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

18   more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

19   conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"  *Id.* (quoting

20   *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

21   for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

22   its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the

23   interplay between the factual allegations of the complaint and the dispositive issues of law in the

24   action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

25           In making this context-specific evaluation, this court "must presume all factual

26   allegations of the complaint to be true and draw all reasonable inferences in favor of the

27   nonmoving party."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule

28   does not apply to "'a legal conclusion couched as a factual allegation,'"  *Papasan v. Allain*,

3

1    478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict

2    matters properly subject to judicial notice," or to material attached to or incorporated by reference

3    into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A

4    court's consideration of documents attached to a complaint or incorporated by reference or matter

5    of judicial notice will not convert a motion to dismiss into a motion for summary judgment.

6    *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

7    III.    ANALYSIS

8         A.  The Parties' Positions

9              Federal defendants contend the First Amended Complaint should be dismissed

10   with prejudice because it does not state a claim upon which relief can be granted.  (ECF 76 at 8.)

11   The complaint, according to federal defendants, once again asserts that the Project's discharges

12   are not exempt because they are not surface irrigation return flows.  (*Id.*)  This theory, these

13   defendants attest, is foreclosed by the court's prior order.  (*Id.*)  The only new allegations are not

14   new at all, federal defendants argue; they are allegations plaintiffs made throughout the briefing

15   and argument on their original complaint.  (*Id.* at 9–10.)  These allegations are that the Project

16   discharges a substantial quantity of three types of polluted groundwater not related to irrigated

17   agriculture: (1) groundwater that predates all farming in the area; (2) groundwater that is

18   discharged in fall and winter when little or no irrigation occurs; and (3) groundwater that

19   originates from parcels where no farming occurs because the parcels are retired or fallow.  (*Id.* at

20   9.)  Because this court's order on the cross-motions for judgment on the pleadings already

21   assumed that some amount of the Project's discharges did not originate from surface irrigation,

22   federal defendants assert that plaintiffs' First Amended Complaint must be dismissed because it

23   does not sufficiently allege new facts demonstrating the tile drainage flows contain discharges

24   unrelated to agricultural inputs, such as discharges from industrial pollution.  (*Id.* at 11.)

25             The Authority similarly asserts plaintiffs' First Amended Complaint must be

26   dismissed because it does not contain any new allegations, much less any allegation that the

27   Project's discharges are unrelated to crop production.  (ECF 77-1 at 10.)  Plaintiffs' allegations

28   can be reduced to reliance on four categories of non-exempt discharges, the Authority contends:

4

1   the three identified by federal defendants and a fourth, irrigation return flows, which plaintiffs

2   assert are not exempt because they are not surface flows.  (*Id.* at 11.)  The Authority argues this

3   court's order provided three reasons why each of these four types of discharges falls within the

4   scope of the exemption.  (*Id.* at 10–12.)  First, this court held the exemption is not limited to

5   surface flows, so groundwater may be exempt.  (*See id.* at 12–13.)  Second, the court concluded

6   that inclusion of the phrase "entirely of" in one of the two statutory exemptions meant the CWA

7   "exempts discharges from irrigated agriculture that are related to crop production."  (*Id.*)  Each of

8   the four categories of discharges plaintiffs identify is related to crop production.  (*Id.* at 15.)

9   Third, the court determined that the term "return flows" does not limit the exemption to

10  discharges that return to the exact same source from which they originated.  (*Id.* at 15–16.)

11  Therefore, plaintiffs' focus on where a specific molecule of water comes from, instead of whether

12  the water is discharged because of crop production or some unrelated activity, misapprehends the

13  court's order.  (*Id.*)

14            Plaintiffs counter that they have pled adequate facts to support a claim that some

15  amount of the Project's discharges is unrelated to crop production.  (ECF 80 at 1.)  Plaintiffs

16  plead, for example, that the Project discharges groundwater that "predates all farming."  (*Id.* at

17  15.)  The statutory exemption language considers the source of the discharge, plaintiffs' claim,

18  not the purpose of the discharge system.  (*Id.*)  Therefore, the mere happenstance that the

19  Project's purpose may be "related to" crop production does not automatically exempt all of its

20  discharges of polluted groundwater.  Furthermore, plaintiffs contend, exemptions from the

21  CWA's permitting regime must be narrowly construed.  (*Id.* at 11–14 (citing *inter alia N. Cal.*

22  *River Watch v. City of Healdsburg*, 496 F.3d 993, 1001 (9th Cir. 2007)).)  Plaintiffs also rehash

23  their arguments on statutory interpretation contained in their unsuccessful motion for judgment on

24  the pleadings.  (*Id.* at 5 –11; ECF 82 at 9–15.)

25            In its reply, the Authority reiterates its argument that the applicability of the

26  exemption turns on whether the discharge was caused by an activity related to crop production or

27  by some other activity, such as the disposal of toxic waste.  (ECF 84 at 4–5.)  Plaintiffs' focus on

28  the content of each type of discharge is therefore myopic and counter to Congressional intent,

1  which confirmed that Congress created this exemption to ensure a level playing field between

2  irrigated and non-irrigated agriculture.  (*Id.* at 6.)  Because plaintiffs do not plead that the

3  Project's discharges contain discharges caused by some activity unrelated to crop production, the

4  Authority asserts its motion to dismiss must be granted.

5        B.  Discussion

6        There is tension between the overarching purpose of the CWA and this Circuit's

7  interpretive canons applicable to the CWA, on the one hand, and Congress's stated purpose for,

8  and explanation of, the irrigated agriculture exemption on the other.  The general purpose of the

9  CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's

10  waters."  33 U.S.C. § 1251(a).  "Claims of exemption, from the jurisdiction or permitting

11  requirements, of the CWA's broad pollution prevention mandate must be narrowly construed to

12  achieve" this purpose.  *N. Cal. River Watch*, 496 F.3d at 1001.  On the other hand, the legislative

13  history of the return flows exemption suggests some members of Congress, at least, believed the

14  exemption would level the playing field between farmers who rely on irrigation and those who do

15  not.  *See, e.g.*, 123 Cong. Rec. S21, 26,702 (daily ed. Aug. 4, 1977) (statement of Sen. Stafford)

16  ("This amendment promotes equity of treatment among farmers who depend on rainfall to irrigate

17  their crops and those who depend on surface irrigation which is returned to a stream in discrete

18  conveyances.")).  Moreover, in discussing the exemption, the Senate Environment and Public

19  Works Committee Report explained, "In exempting discharges composed 'entirely' of return

20  flows from irrigated agriculture from the [NPDES permitting] requirements of section 402, the

21  committee did not intend to differentiate among return flows based upon their content."  S. Rep.

22  No. 95-370, *reprinted in* 1977 U.S.C.C.A.N. 4326, 4360.  These conflicting background

23  considerations are not unsurprising given the nature of the legislative process.  That process does

24  not provide clear guidance on the issues presented by the pending motions to dismiss.  The

25  procedural burdens and inferences that control at the motion to dismiss stage do, however.

26        The court finds plaintiffs have pled sufficient facts to state a claim for a violation

27  of the CWA.  The only dispute before the court is whether the Project is exempt from the NPDES

28  permit requirement because it is covered by the "return flows from irrigated agriculture"

1  exemption.  This court has interpreted that exemption to cover discharges from irrigated

2  agriculture that do not contain additional discharges unrelated to crop production.  (Order at 21.)

3  Plaintiffs plead new facts that, when accepted as true, suggest at least some amount of the

4  Project's discharges may be unrelated to crop production.  Defendants correctly note that

5  plaintiffs previously raised several of their new allegations in the First Amended Complaint as

6  arguments on the adjudicated cross-motions for judgment on the pleadings.  (*See* ECF 77-1 at 4–

7  7.)  However, the inclusion of these new facts in the First Amended Complaint makes all the

8  difference on the pending motions to dismiss, which challenge the legal sufficiency of plaintiffs'

9  pleading.  In particular, plaintiffs allege that the Project discharges a substantial quantity of

10  contaminated groundwater originating in parcels where no farming occurs because these parcels

11  are fallow or have been retired from agricultural use.  (FAC ¶ 41(c).)  Given this allegation, the

12  court reasonably infers, as it must at this stage of the litigation, that the Project's discharges are

13  not composed "entirely of return flows from irrigated agriculture" because they contain additional

14  discharges from polluted groundwater originating from retired land that no longer supports

15  irrigated agriculture.  The exemption does not cover these resulting commingled discharges

16  because it is plausible that discharges from retired land, which no longer supports irrigated

17  agriculture, are not related to crop production.

18           The court's prior order does not foreclose this conclusion.  The court found, as a

19  matter of statutory interpretation, that the Project falls within the plain language of "irrigated

20  agriculture" contained in the CWA exemption.  (Order at 13–14.)  To reach this conclusion, the

21  court noted that the parties agree the reason the Project exists is to enable the growing of crops

22  and that the Project's drainage of contaminated groundwater through the Project's subsurface tiles

23  occurs only to enable the growing of irrigated agriculture.  (*Id.*)  However, the question raised by

24  the pending motions to dismiss is not whether the Project exists to enable the growing of irrigated

25  crops: it is whether plaintiff may plead that the Project's discharges do not consist "entirely of

26  return flows from irrigated agriculture."  Nothing before the court renders implausible plaintiffs'

27  allegation that groundwater from retired parcels is unrelated to crop production.

28  /////

1    The Authority's argument that applicability of the exemption turns on what

2  activity causes the discharge does not change the court's conclusion here.  In *Concerned Area*

3  *Residents for Environment v. Southview Farm*, 34 F.3d 114, 120–122 (2d Cir. 1994), discussed in

4  the court's prior order, the Second Circuit considered whether discharges from a concentrated

5  animal feeding facility fell under the "agricultural stormwater" exemption from the CWA's

6  NPDES permitting requirement.  In interpreting the scope of the exemption from the definition of

7  "point source," the court mused: "We think the real issue is not whether the discharges occurred

8  during rainfall or were mixed with rain water run-off, but rather, whether the discharges were the

9  result of precipitation."  *Id.* at 120. This suggests that the court in *Southview Farm* believed the

10  cause of the discharge to be determinative.

11    In contrast, this court held that the "return flows" exemption "covers discharges

12  from irrigated agriculture that do not contain additional discharges unrelated to crop production."

13  Moreover, if taken to its logical conclusion, the Authority's interpretation would exempt any

14  discharge made in the name of crop production without any closer inquiry into whether a majority

15  of the total commingled discharge is in fact related to crop production.  Such a loophole is not

16  consistent with a fair reading of the CWA.

17    Plaintiffs' remaining allegations in their First Amended Complaint do not state a

18  plausible claim for relief.  Accordingly, the court STRIKES these allegations.  To the extent

19  plaintiffs premise a violation of the CWA upon allegations contained in the original complaint,

20  these allegations, already dispensed with in the court's prior order, remain insufficient.  (*See, e.g.*,

21  Order at 26 (dismissing as conclusory plaintiffs' allegation the Project "necessarily discharges

22  polluted groundwater along with irrigation water".)  The only other new allegations in the First

23  Amended Complaint do not state a plausible claim in light of the court's interpretation of the

24  exclusion at issue here, which is that the exemption covers "discharges from irrigated agriculture

25  that do not contain additional discharges unrelated to crop production."  (Order at 21.)  In

26  particular, plaintiffs newly plead that (1) "[c]ontaminated groundwater that pre-dates all farming

27  in the area" and (2) "[c]ontaminated groundwater discharged at times, such as the fall and winter

28  months, when little or no irrigation occurs" and whose source is not "irrigation water," are not

1  related to "irrigated agriculture."  (FAC ¶ 41(a)–(b).)  These two allegations do not amount to a

2  plausible claim that such groundwater, discharged to prevent damage to crops' root zones, is

3  unrelated to crop production.

4        In sum, the court must infer at this juncture that groundwater under fallow or

5  retired land does not pose any risk of harm to crops' root zones.  (FAC ¶ 41(c).)  Plaintiffs state a

6  plausible claim for relief in this respect, and this is plaintiffs' sole valid allegation upon which

7  this case may proceed.

8  IV.    CONCLUSION

9        For the foregoing reasons, federal defendants' and the Authority's motions to

10 dismiss are GRANTED in part and DENIED in part.

11       IT IS SO ORDERED.

12 DATED:  March 27, 2014.

15 _____
   UNITED STATES DISTRICT JUDGE