UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, et al., | No. 2:11-cv-02980-KJM-CKD |
| Plaintiffs, | |
| v. | ORDER |
| DAVID MURILLO, Regional Director of the United States Bureau of Reclamation, UNITED STATES BUREAU OF RECLAMATION, and SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, | |
| Defendants. | |

This matter is before the court on a motion to file a second amended complaint by the Pacific Coast Federation of Fishermen's Associations, the California Sportfishing Protection Alliance, Friends of the River, San Francisco Crab Boat Owners Association, Inc., the Institute for Fisheries Resources, and Felix Smith (collectively, "plaintiffs"). Mot., ECF No. 143. Defendants David Murillo, the United States Bureau of Reclamation ("the Bureau"), and the San Luis & Delta-Mendota Water Authority ("the Authority") oppose the motion. Opp'n, ECF No. 147. Plaintiffs have replied. Reply, ECF No. 150. In this order, the court refers to Murillo and the Bureau collectively as "federal defendants."

/////

1

The court held a hearing on November 4, 2016. Stephan C. Volker appeared for plaintiffs; Martin F. McDermott appeared for federal defendants; and Eric J. Buescher appeared for the Authority. For the following reasons, the court denies plaintiffs' motion.

I.   BACKGROUND

   A.   Procedural History

Plaintiffs commenced this action on November 9, 2011, alleging defendants violated the Clean Water Act, 33 U.S.C. § 1311(a) ("the Act"), by discharging pollutants into the waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit. Compl., ECF No. 1.

On September 16, 2013, the court denied federal defendants' and plaintiffs' cross-motions for judgment on the pleadings. 2013 Order, ECF No. 70. The court converted the federal defendants' Rule 12(c) motion for judgment on the pleadings to a Rule 12(b)(6) motion and dismissed plaintiffs' complaint with leave to amend. *Id.* at 26. On October 7, 2013, plaintiffs filed their First Amended Complaint. First Am. Compl. (FAC), ECF No. 71. On November 15, 2013, federal defendants and the Authority each filed a motion to dismiss. ECF Nos. 76, 77. On March 28, 2014, the court found plaintiffs had pled sufficient facts to state a claim for a violation of the Act because the Grasslands Bypass Project ("the Project") operated by defendants collects and discharges a substantial quantity of contaminated groundwater from fallow land that may be unrelated to crop production. FAC ¶ (41)(c); 2014 Order at 7, ECF No. 87. The court therefore denied the motion as to that claim, but otherwise granted defendants' motion and struck the balance of the allegations in the First Amended Complaint. 2014 Order at 8.

On September 2, 2016, the court granted in part and denied in part cross-motions for summary judgment. 2016 Order, ECF No. 138. The court found a genuine dispute of material fact as to whether lands in the Charleston Drainage District, specifically the Vega Solar Project, had been retired from farming and were therefore no longer irrigated at the time plaintiffs filed the First Amended Complaint. *Id.* at 17. Accordingly, the court denied the parties' cross-motions for summary judgment as to that District. *Id.* However, after evaluating plaintiffs' claims regarding the remaining water districts — i.e., Widren Water District, Broadview Water

District, and Mercy Springs Water District — the court granted the balance of defendants' motions for summary judgment. *Id.* at 20.

On October 5, 2016, plaintiffs filed the instant motion seeking leave to file a second amended complaint. ECF No. 143. Plaintiffs explain they aim to amend the complaint to (1) include the now known date for the cessation of irrigation on the Vega Solar Project site, (2) remove the claim that the San Luis Drain is a water of the United States, and (3) provide additional information about claims regarding the San Luis Drain's contaminated discharge to Mud Slough that the court previously found to be too general. *Id.* at 2.

### B. Case Scheduling

The court convened an initial scheduling conference on July 31, 2014. ECF No. 99. The court set a fact and expert discovery cut-off of July 31, 2015 and October 1, 2015, respectively, and an October 16, 2015 dispositive motion deadline. Scheduling Order, ECF No. 100. The court's scheduling order also provided that no further joinder of parties or amendments to pleadings would be permitted without leave of court and for good cause shown. *Id.* at 2.

### C. Undisputed Facts

The court here relies on the parties' undisputed facts at summary judgment to provide the relevant factual background. The Project drains the Grassland Drainage Area ("GDA"), which comprises 97,400 acres on the west side of the San Joaquin Valley. Statement of Undisputed Facts (SUF) No. 1, ECF No. 124-1. The Project is jointly administered by the Bureau and the Authority and does not have a current NPDES permit. SUF Nos. 13, 97. The Project conveys waters from the GDA through the Grassland Bypass Channel ("Bypass") to the San Luis Drain and into the Mud Slough. SUF No. 8. Mud Slough is a wetland adjacent to national and state wildlife refuges, and is considered a water of the United States under the Act. SUF Nos. 9, 67. Mud Slough then empties into the San Joaquin River, which flows into the Sacramento and San Joaquin River Delta, and into the San Francisco Bay. *Id.* Within the GDA, at least 30,800 acres have subsurface drainage systems. SUF No. 17. Water within the subsurface drainage system also flows to the Bypass, and into the San Luis Drain, where it subsequently discharges into Mud Slough. SUF No. 18. The waters discharged into Mud Slough

by the Project contain pollutants including selenium, boron, and salts.  SUF No. 65.  Prior to reaching the Bypass, water from the GDA goes through the San Joaquin River Improvement Project ("SJRIP"), and is reused on parcels of land within the SJRIP.  Suppl. SUF No. 18, ECF No. 116-1.  Most of the land the SJRIP covers is within the Mercy Springs Water District.  Suppl. SUF Nos. 9, 18.

Outside the SJRIP, the GDA includes land overseen by various local agencies, including the Charleston Drainage District and the Widren Water District.  Suppl. SUF No. 1.  The Vega Solar Project occupies part of the land within the boundaries of the Charleston Drainage District, which is a participating member in the Project.  SUF Nos. 100–01.  The solar installation in the Vega Solar Project was constructed after July 1, 2014.  Falaschi Decl. ¶ 9, ECF No. 115-2.  The land beneath the Vega Solar Project has a subsurface drainage system.  SUF No. 105.  Water from this system first enters an onsite sump, into which other nearby subsurface drainage systems also discharge, and then all the collected water flows into the Project, and is finally discharged into Mud Slough through the San Luis Drain.  SUF Nos. 105–08.  The land within the Widren Water District is retired from agricultural use and is no longer irrigated.  SUF Nos. 114–15.

## II.     LEGAL STANDARD

A party seeking leave to amend pleadings after the deadline specified in the scheduling order must first satisfy Federal Rule of Civil Procedure 16(b)'s "good cause" standard.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir. 1992).  Rule 16(b)(4) states that a "schedule may be modified only for good cause and with the judge's consent."  This good cause evaluation "is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15."  *Johnson*, 975 F.2d at 609.  The liberal amendment policy of Rule 15(a) is distinct from the good cause standard of Rule 16(b), which focuses primarily on the diligence of the moving party, *id.*, and that party's reasons for seeking modification, *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011).  District courts including this one have looked to a more detailed three-part test: a movant may establish good cause by showing (1) the movant diligently assisted the court to create a workable Rule 16 order; (2)

4

1  circumstances beyond the movant's control and anticipation prevented compliance with the order;
2  and (3) after it became apparent a new schedule was needed, the movant promptly sought relief.
3  *See, e.g., Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999); *Kuschner v.*
4  *Nationwide Credit, Inc.*, 256 F.R.D. 684 (E.D. Cal. 2009).

5  If good cause exists, the party next must satisfy Rule 15(a). *Johnson*, 975 F.2d at
6  608 (approving this order of operations). Federal Rule of Civil Procedure 15(a)(2) states "[t]he
7  court should freely give leave [to amend a pleading] when justice so requires" and the Ninth
8  Circuit has "stressed Rule 15's policy of favoring amendments." *Ascon Props., Inc. v. Mobil Oil*
9  *Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "In exercising its discretion [regarding granting or
10 denying leave to amend] 'a court must be guided by the underlying purpose of Rule 15—to
11 facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs,*
12 *Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977,
13 979 (9th Cir. 1981)). However, "the liberality in granting leave to amend is subject to several
14 limitations. *Ascon Props.*, 866 F.2d at 1160 (internal citations omitted). A court need not grant
15 leave to amend where there is "undue delay," "bad faith," "undue prejudice to the opposing
16 party," or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Smith v.*
17 *Pac. Prop. Dev. Co.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (citing the *Foman* factors). Not all of
18 the *Foman* factors merit equal weight. "[I]t is the consideration of prejudice to the opposing party
19 that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052
20 (9th Cir. 2003). "The party opposing amendment bears the burden of showing prejudice." *DCD*
21 *Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). "Absent prejudice, or a strong
22 showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in
23 favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052.

24 Here, the original scheduling order foreclosed amendments without leave of court.
25 Scheduling Order at 2 ("No further joinder of parties or amendments to pleadings is permitted
26 without leave of court, good cause having been shown) (citing Fed. R. Civ. P. 16(b); *Johnson*,
27 975 F.2d 604). As a result, the court will first consider the factors under Rule 16 and then the
28 factors under Rule 15(a). *See Jackson*, 186 F.R.D. at 607.

III.   DISCUSSION

    A.   <u>Nature of Notice Re Request to Amend</u>

As an initial matter, defendants argue the court should deny plaintiffs' motion simply for failing to include a Rule 16 request to modify the scheduling order. Opp'n 10–11 (citing *Johnson*, 975 F.2d at 608–09). Although the Ninth Circuit has suggested denial on these grounds may be appropriate, it has never established such a rigid rule. *See Johnson*, 975 F.2d at 608–09 (citing *Jauregui v. City of Glendale*, 852 F.2d 1128, 1133–34 (9th Cir.1988); *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir.1985)).

In *Johnson*, the Ninth Circuit affirmed a district court's denial of Dairl Johnson's motion to amend the complaint to add an additional party. *Id.* The *Johnson* court initially relied on the rule "suggested" by its previous cases that required a Rule 16 request to affirm the district court ruling. However, the court continued that "the result would not change if Johnson's motion to amend the complaint were treated as a *de facto* motion to amend the scheduling order rather than a motion to join a party after the binding cut-off date for the motion had passed." *Id.* at 609. In the former instance, the court explained, Johnson would need to show "good cause" under Rule 16; in the latter, Johnson would need to establish "extraordinary circumstances" under the terms of the initial scheduling order. *Id.* After concluding that Johnson failed to make an adequate showing under either standard, the court held that the district court did not abuse its discretion when it denied Johnson's motion. *Id.* at 609–10.

As *Johnson* shows, the court may consider a motion to amend under either the "good cause" standard under Rule 16, for which Ninth Circuit precedent "suggests" a Rule 16 request may be necessary, or under the terms of the scheduling order itself. In this case, the underlying scheduling order requires the movant to show good cause for the amendment. *See* ECF No. 100. As a result, whether plaintiffs' motion is construed as a *de facto* motion to amend the scheduling order or instead as a motion to amend the complaint after the cut-off date is irrelevant; in either case, plaintiffs must show "good cause." Thus, the court declines to deny plaintiffs' motion on the grounds that plaintiffs failed to make an express Rule 16 request and instead determines whether plaintiffs have sufficiently established good cause to amend the

complaint. *See Atwell v. City of Surprise*, 440 F. App'x 585, 586 (9th Cir. 2011) (even where court treats motion to amend as a de facto motion to amend the scheduling order, movant must show good cause).

  B. <u>Rule 16</u>

    1. <u>Proposed Amendments and Arguments</u>

    As noted above, plaintiffs' motion seeks leave to file an amended complaint that makes three changes to the operative complaint. Mot. ECF No. 143. First, plaintiffs aim to include the date for the cessation of irrigation on the Vega Solar Project site; the proposed second amended complaint alleges that irrigated agriculture terminated "on or before July 1, 2014." Proposed Second Am. Compl. (PSAC) ¶ 42, ECF No. 143-2. Second, plaintiffs aim to remove the claim that the San Luis Drain is a water of the United States. *See, e.g.*, PSAC ¶ 23. Third, plaintiffs propose adding information about claims regarding the San Luis Drain's contaminated discharge to Mud Slough to address the court's previous finding that the operative pleadings are too general. The proposed second amended complaint now includes allegations that address how defendants' contaminated groundwater is transported between the Grassland Bypass Channel and Mud Slough, PSAC ¶ 25, as well as allegations identifying parcels of non-irrigated land whose contaminated water is collected by the Project, PSAC ¶ 42, and deposits of sediment in the San Luis Drain that pollute the Project's discharges, PSAC ¶ 43. Finally, although plaintiffs do not discuss it in their motion, the court notes the proposed amended complaint includes a new footnote, PSAC ¶ 40 n.6, that sets forth plaintiffs' interpretation of "entirely," a term the court has repeatedly addressed. *See* 2013 Order at 7–8, 17–21; 2014 Order at 6–7; 2016 Order at 16.

    Although plaintiffs do not explicitly address whether good cause exists to permit amendment to the complaint, they do generally support their proposed changes on the grounds that the changes "eliminate or narrow the issues framed for trial." Mot. 5. In addressing each proposed change, plaintiffs first explain they did not know about the covenants against irrigation at the Vega Solar Project site until they were served with declarations attached to defendants' summary judgment motions, which were filed on October 16, 2015. Mot. 5; Volker Decl. ¶ 2, ECF No. 143; Bureau Mot. Summ. J., ECF No. 109; Authority Mot. Summ. J., ECF No. 111.

7

1  Second, plaintiffs explain removing the claim that the San Luis Drain is a water of the United
2  States simplifies the issues for trial.  Mot. 5.  Third, plaintiffs explain their elaboration as to the
3  discharges to Mud Slough from the San Luis Drain addresses claims the court deemed too
4  "general."  *Id.*

5  In response, defendants argue plaintiffs seek to improperly expand the issues for
6  trial while requesting a "second bite of the apple" to re-litigate claims the court already addressed.
7  Opp'n 5.  Defendants argue plaintiffs' amendments are untimely given the advanced stage of
8  litigation.  *Id.*  Specifically addressing the proposed changes, defendants argue plaintiffs' first
9  proposed change attempts to revive a dispute plaintiffs could have alerted the court to at the
10 summary judgment stage.  *Id.* at 13.  Defendants next argue plaintiffs' proposed second change
11 can be accomplished by stipulation and does not justify amending the pleadings.  *Id.*  As to the
12 third change, defendants argue plaintiffs necessarily fail to establish their own diligence when
13 they point to the court's prior summary judgment order as the basis for their proposed amendment
14 here.  *Id.* at 14.  Defendants conclude by arguing amendments to the complaint at this stage
15 would cause substantial prejudice by undermining defendants' right to rely on the court's
16 summary judgement ruling and would risk the re-opening of discovery and additional dispositive
17 motions.  *Id.* at 14, 16.

18        2.      <u>Analysis</u>

19  The court finds, at the outset, plaintiffs have failed to establish good cause for their
20 first and second proposed amendments.  As plaintiffs effectively concede in their reply, the first
21 proposed change tracks this court's order on summary judgement virtually verbatim.  Reply 6
22 (citing 2016 Order).  In that order, the court found there existed "a genuine dispute whether the
23 [Vega Solar Project] land was irrigated prior to" July 2014.  2016 Order at 17.  Plaintiffs may
24 address that dispute of fact at trial without the amendment.  As to the second proposed change,
25 the matter might be handled by a stipulation of the parties.  *See* Reply 5–6 (agreeing "whether the
26 San Luis Drain is a water of the United States is immaterial to the outcome of this case"); Opp'n
27 9 n.7 ("Whether the San Luis Drain is or is not a 'water of the United States' is not material to the
28 Court's rulings on the scope of the irrigated agriculture exemption in this case.").  At hearing, the

8

1  parties appeared willing to consider a stipulation, although the Authority expressed concerns
2  about plaintiffs' attempting to expand the scope of issues for trial.  If the parties are unable to
3  reach a stipulation, nothing stands in the way of plaintiffs' dismissing a claim before or declining
4  to prove up an allegation at trial.  In any event, plaintiffs have failed to establish good cause as to
5  either of their first two proposed amendments.

6  　　　　　Plaintiffs also have not established good cause for their third proposed amendment
7  for two reasons.  First, plaintiffs' argument that the amendment "merely seeks to clarify" other
8  allegations in the operative complaint, by itself, is insufficient to establish good cause.  Reply 6.
9  Plaintiffs do not point to any new facts that would support adding allegations this close to trial.
10 Indeed, the proposed allegations largely track the arguments plaintiffs made before the court at
11 the summary judgement stage.  *Compare* 2016 Order at 13 (discussing plaintiffs' theories of (1)
12 discharges of water from "land that is used for public infrastructure, businesses, and residences,
13 among other uses," (2) discharge of stormwater runoff, and (3) seepage into the San Luis Drain
14 and the sediment contained therein) *with* PSAC ¶¶ 42–43 (proposing inclusion of allegations
15 regarding non-irrigated lands adjacent to the San Luis Drain and elsewhere situated within the
16 Grassland Drainage Area and of allegations regarding deposits of sediment in the San Luis
17 Drain).  As a result, plaintiffs have not justified making these changes so close to trial.

18 　　　　　Second, and of greater concern at this stage, plaintiffs' proposed changes attempt
19 to relitigate issues the court has already decided.  *See* Reply 6–7.  In its prior order, the court
20 struck plaintiffs' three theories as falling outside the scope of the operative complaint.  2016
21 Order at 13–14.  The court explained that even if these theories were not stricken, they would not
22 survive a motion for summary judgment.  2016 Order at 14 n.1.  As a result, although the court
23 denied defendants' motion for summary judgment as to the Vega Solar Project, the court granted
24 the balance of defendants' motions for summary judgment.  *Id.* at 19–20.  In seeking to amend the
25 complaint now, plaintiffs challenge the court's conclusion that the allegations fell outside the
26 portions of the complaint operative at the time summary judgment was decided, as plaintiffs
27 assert their proposed changes are "entirely consistent" with the first amended complaint.  Reply 6;
28 *see also* Joint Statement 6–7, ECF No. 146 ("Plaintiffs respectfully disagree with the Court's

1  rulings that only discharges from the Vega Solar Project might potentially require an NPDES
2  permit."). That plaintiffs raise this disagreement through a motion to amend, having not sought
3  reconsideration, further supports the conclusion that plaintiffs have not established good cause to
4  grant their motion.

5  Because plaintiffs have failed to show good cause to amend the complaint, the
6  court need not proceed to consider the Rule 15 factors.

7  IV.     CONCLUSION
8  For reasons set forth above, the court DENIES plaintiffs' motion for leave to
9  amend the first amended complaint.
10  This order resolves ECF No. 143.
11  IT IS SO ORDERED.
12  DATED: March 28, 2017.

_____
UNITED STATES DISTRICT JUDGE