UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID MURILLO, Regional Director of the United States Bureau of Reclamation, UNITED STATES BUREAU OF RECLAMATION, and SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, <br><br> Defendants. | No. 2:11-cv-02980-KJM-CKD <br><br><br> ORDER |

Plaintiffs Pacific Coast Federation of Fishermen's Associations, the California Sportfishing Protection Alliance, Friends of the River, San Francisco Crab Boat Owners Association, Inc., the Institute for Fisheries Resources and Felix Smith (collectively, "plaintiffs") move to reconsider a portion of the court's 2016 summary judgment order. Notice of Mot., ECF No. 165. Specifically, plaintiffs ask the court to reconsider its finding on summary judgment that a particular theory fell outside the complaint's operative scope. Defendants David Murillo and the United States Bureau of Reclamation (collectively, "the Bureau") and the San Luis & Delta-Mendota Water Authority ("the Authority") separately oppose. Bureau Opp'n, ECF No. 169; Authority Opp'n, ECF No. 170. For the reasons explained below, the court DENIES the motion.

1

I. BACKGROUND

The court has repeatedly outlined the procedural and factual background of this case. *See* Order September 16, 2013 ("2013 Order") at 2–5, ECF No. 70; Order March 28, 2014 ("2014 Order") at 2–3, ECF No. 87; Order September 2, 2016 ("2016 Order") at 2–3, 7–8, ECF No. 138; Order March 28, 2017 ("2017 Order") at 2–4, ECF No. 162. Most recently, the court's Final Pretrial Order's statement of the case delineates the issues remaining for trial. *See* Final Pretrial Order at 2–4, ECF No. 163 (also filed March 28, 2017). The court therefore provides only those facts essential to this motion.

A. The Court's Orders

This case is about whether defendants violated the Clean Water Act, 33 U.S.C. § 1311(a) ("the Act"), by discharging pollutants into the waters of the United States without a required National Pollutant Discharge Elimination System ("NPDES") permit. The central issue is whether defendants' operation of the Grasslands Bypass Project ("the Project") is exempt from an NPDES permit under the "return flow from irrigated agriculture" exemption, 33 U.S.C. § 1342(*l*)(1). Plaintiffs do not challenge here the portions of the court's orders interpreting that exemption to exclude additional discharges "unrelated to crop production." *See* 2013 Order at 21; 2014 Order at 2, 7.[1]

In 2013, relying on its interpretation of the NDPES exemption, the court denied the parties' cross-motions for judgment on the pleadings. 2013 Order at 25–26. The court then construed the Bureau of Reclamation's motion as one to dismiss under Rule 12(b)(6). *Id.* at 26-27. After rejecting plaintiffs' conclusory allegation that some Project discharges were unrelated to irrigation, the court concluded plaintiffs did not plead adequate facts to support their claim and dismissed the original complaint without prejudice. *Id.* (citing Compl. ¶ 26, ECF No. 2 (alleging the Project "necessarily discharges polluted groundwater along with irrigation water")).

---

[1] Plaintiffs challenge only the court's 2016 summary judgment order. *See* Notice of Mot. at 2; Mem. P. & A. at 4–9, ECF No. 165-1. Because plaintiffs neither expressly challenge nor cite any basis for revisiting the court's 2013 and 2014 orders, those orders articulate the law of this case. *Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012). This order thus analyzes only the court's application of those rules in its 2016 summary judgment order.

In 2014, the court denied in part and granted in part defendants' motions to dismiss the First Amended Complaint. *See* 2014 Order; First Am. Compl. ("FAC"), ECF No. 71. The court found plaintiffs stated a claim because their new allegations suggested some Project discharges may be unrelated to crop production. 2014 Order at 7. Specifically, plaintiffs alleged the Project discharges contaminated groundwater originating in parcels where no farming occurs because these parcels are fallow or have been retired from agricultural use. FAC ¶ 41(c). The permitting exemption would not cover the resulting commingled discharges because discharges from retired land that no longer supports irrigated agriculture are plausibly unrelated to crop production. 2014 Order at 7. The court struck the balance of the allegations in the First Amended Complaint, however, because they did not mention any discharges that were plausibly unrelated to crop production. *Id.* at 8–9. Specifically, plaintiffs had alleged "[c]ontaminated groundwater that pre-dates all farming in the area" and "[c]ontaminated groundwater discharged at times, such as the fall and winter months, when little or no irrigation occurs" were unrelated to crop production. FAC ¶ 41(a)–(b). The court struck both allegations because the Project discharges these two types of groundwater to prevent damage to crops' root zones, so it was not plausible that the discharges were unrelated to crop production. *Id.* at 8–9 (striking FAC ¶ 41(a)–(b)); *see also* 2013 Order at 14:9–11. Having struck paragraph 41(a) and (b), the court concluded paragraph 41(c) of the First Amended Complaint stated "plaintiffs' sole valid allegation upon which this case may proceed." *Id.* at 9.[2]

---

[2] Paragraph 41 of the First Amended Complaint provides in full:

> 41. The agricultural return flows exemption does not apply because defendants' discharges are not surface irrigation return flows. To the contrary, the Project discharges a substantial quantity of the following categories of polluted groundwater that are not related to irrigated agriculture:
>
> a. Contaminated groundwater that pre-dates all farming in the area;
>
> b. Contaminated groundwater discharged at times, such as the fall and winter months, when little or no irrigation occurs. The source of this discharge is not irrigation water but instead contaminated groundwater;
>
> c. Contaminated groundwater originating from parcels where no farming occurs because, for instance, these parcels have been fallowed or retired from agricultural use.

3

In resolving summary judgment in 2016, the court looked to its 2013 and 2014 orders to assess which of plaintiffs' four theories went beyond the operative complaint. *See* 2016 Order at 12–14. As relevant here, the court found plaintiffs' seepage and sediment theory fell outside the complaint's scope. *Id.* at 13. Plaintiffs theorized that water seeped into the San Luis Drain from adjacent non-irrigated lands, accumulated in the Drain as toxic sediment, and was eventually released downstream. *Id.*; *see also* Pls.' Mem. P. & A. Summ. J. at 24–25, ECF No. 112-1. Because plaintiffs' complaint nowhere mentioned this theory, and in light of the court's prior orders narrowly limiting plaintiffs' claims, the court struck plaintiffs' theory. 2016 Order at 13–14 (explaining "[n]othing remains" of this theory in light of the 2014 Order). In a footnote, the court alternatively found, even if it were not stricken, plaintiffs' theory "would not survive a motion for summary judgment." *Id.* at 14 n.1. After narrowing plaintiffs' claims to those the complaint properly encompassed, the court granted summary judgment for defendants as to all but one of the non-irrigated water districts plaintiffs asserted were retired and contributed discharge to the Project. *Id.* at 14–20.

B. <u>Plaintiffs' Motion for Reconsideration</u>

On April 25, 2017, plaintiffs moved for reconsideration. *See* Notice of Mot.; Mem. P. & A., ECF No. 165-1. Defendants opposed. Bureau Opp'n; Authority Opp'n. Plaintiffs filed a reply. Reply, ECF No. 171. On June 13, 2017, the court submitting the matter without hearing. ECF No. 173.

II. <u>STANDARD ON RECONSIDERATION</u>

The court has authority under its inherent powers and the Federal Rules of Civil Procedure to reconsider its prior motion granting partial summary judgment. "As long as a district court has jurisdiction over [a] case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (citations and emphasis omitted). In addition, Rule 54(b) authorizes courts to revise "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at

any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986).

Reconsideration is appropriate where it is necessary to correct clear error or prevent manifest injustice, where new evidence has become available, or where there has been an intervening change in controlling law. *Cachil Dehe Band of Wintun Indians v. Cal.*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) (citing *Sch. Dist. No. 1J Multnomah Cty. v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). Under Local Rule 230(j), the party moving for reconsideration must explain "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion" and "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal. L.R. 230(j). "To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Knight v. Rios*, No. 09-00823, 2010 WL 5200906, at *2 (E.D. Cal. Dec. 15, 2010).

Plaintiffs here move for reconsideration on the basis of clear error. *See* Mem. P. & A. Clear error occurs when "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Mere doubts or disagreement about the wisdom of a prior decision . . . will not suffice for this exception. To be clearly erroneous, a decision must . . . [be] more than just maybe or probably wrong; it must be dead wrong." *Campion v. Old Repub. Home Prot. Co., Inc.*, No. 09–748, 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011) (quoting *Hopwood v. State of Tex.*, 236 F.3d 256, 273 (5th Cir. 2000)); *see also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (movant must demonstrate a "wholesale disregard, misapplication, or failure to recognize controlling precedent").

/////

/////

/////

/////

III. DISCUSSION

Plaintiffs argue the court clearly erred, first, when it determined plaintiffs' seepage and sediment theory fell outside the operative complaint, and, second, when it held plaintiffs' theory would not survive summary judgment. Mem. P. & A. at 4–5. As discussed below, the court finds its first determination was not clearly erroneous and the court therefore does not reach plaintiffs' second contention.

A. Standards Re New Allegations at Summary Judgment Stage

For plaintiffs' motion to succeed, the court here must harbor a "definite and firm conviction" that the 2016 Order erroneously found plaintiffs' seepage and sediment theory fell outside the complaint. *Smith*, 727 F.3d at 955.

Where "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (citing *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006)); *see also Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011) (affirming summary judgment against insured whose complaint did not raise claim under a specific provision of his insurance policy). A party may not use summary judgment as a "procedural second chance to flesh out inadequate pleadings." *Wasco Products*, 435 F.3d at 992; *see also Navajo Nation*, 535 F.3d at 1079–80 (where plaintiffs' complaint provided neither their claim asserted at summary judgment nor its factual bases, plaintiffs did not sufficiently state their claim and did not sufficiently present the claim to the district court at summary judgment); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("Given its inadequate pleading regarding organizational standing, [National Day Laborer Organizing Network] may not effectively amend its Complaint by raising a new theory of standing in its response to a motion for summary judgment.").

This rule against new theories at the summary judgment phase reinforces Federal Rule of Civil Procedure 8(a)(2)'s requirement that the complaint "give the defendant fair notice

of what the plaintiff's claim is and the grounds upon which it rests." *Pickern*, 457 F.3d at 968 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). A court may grant summary judgment against a party who attempts to circumvent this rule. *Id.* at 968–69 (granting summary judgment against plaintiff where the complaint failed to provide defendants with adequate notice of allegations asserted for the first time at summary judgment); *see also Cervantes v. Emerald Cascade Rest. Sys., Inc.*, 644 F. App'x 780, 781 (9th Cir. 2016) ("The district court did not err in granting summary judgment on [claims for retaliation, hostile work environment, and constructive discharge] as they were not advanced until Cervantes's opposition to summary judgment and Cervantes's complaint did not give Emerald Cascade notice of these theories of liability.").

      B.      <u>Analysis of Plaintiffs' New Allegations</u>

At summary judgment, both sets of defendants argued plaintiffs relied on theories that went beyond the operative First Amended Complaint. *See* 2016 Order at 12 (citing Bureau Opp'n at 13, ECF No.114; Authority's Opp'n at 1–2, ECF No. 115). The court agreed as to three of plaintiffs' four asserted theories, including plaintiffs' seepage and sediment theory discussed above. *Id.* at 12–14. Here, plaintiffs argue the court committed clear error because paragraph 41(c) of the First Amended Complaint embraces this theory.

The court rejects outright plaintiffs' reliance on Paragraph 41's general allegation, which plaintiffs construe as a "catch-all" provision. Mem. P. & A. at 6 (citing allegation that "defendants' discharges are not surface irrigation return flows"). The court has twice before rejected this conclusory allegation. *See* 2013 Order at 26 (rejecting allegation that Project "necessarily discharges polluted groundwater along with irrigation water"); *see also* 2014 Order at 8. Nothing has changed in the interim.

Evaluating whether paragraph 41(c) encompasses plaintiffs' seepage and sediment theory is not simple because the complaint nowhere addresses it. Paragraph 41(c) alleges the project discharges "[c]ontaminated groundwater originating from parcels where no farming occurs because, for instance, these parcels have been fallowed or retired from agricultural use." FAC ¶ 41(c). Although the court previously found this paragraph states a claim, plaintiffs'

7

seepage and sediment theory does not fit the example the court relied on in allowing the claim. 2014 Order at 7 (finding it plausible that discharges from retired land that no longer supports irrigated agriculture are unrelated to crop production). Plaintiffs argue the example the court relied on was merely illustrative of a broader category: that is, "[c]ontaminated groundwater originating from parcels where no farming occurs." FAC ¶ 41(c). Even assuming paragraph 41(c) can cover additional examples, it is not clear why plaintiffs' theory is one of them. As plaintiffs asserted at summary judgment, sediment accumulates in the San Luis Drain from a number of different sources, including from "windblown dust, algae, and other types of debris." Pls.' Mem. P. & A. Mot. Summ. J. at 24. Given the various sources of pollution, it was not clear error for the court to conclude this sediment did not accumulate from, or itself constitute, contaminated groundwater "from parcels where no farming occurs."

As the above discussion demonstrates, paragraph 41(c) does not give defendants fair notice of the bases of plaintiffs' claims because that paragraph does not fairly encompass or mention the "seepage and sediment" allegation upon which plaintiffs continue to seek to rely. The Ninth Circuit's decision in *Pickern* illustrates the point. 457 F.3d at 968–69. In that case, a disabled consumer brought an action against a retail store under the Americans with Disabilities Act ("ADA"), alleging the store "contains architectural barriers that make it inaccessible." *Id.* at 968. Although the plaintiff focused on the store's lack of ramp access, at summary judgment she raised new ADA violations that went beyond a failure to provide a ramp. *Id.* Even though the plaintiff's complaint provided an illustrative list of accessibility barriers, the Ninth Circuit affirmed the judgment against her on these new allegations because the defendants had inadequate notice of these new bases for her claim. *Id.* at 968–69 ("Providing a list of hypothetical possible barriers is not a substitute for investigating and alleging the grounds for a claim.").

As did the plaintiff in *Pickern*, plaintiffs here relied on a general allegation in the complaint as a vehicle to assert new theories for the first time at summary judgment. Plaintiffs in both cases argued the examples in the complaint were merely illustrative of the general allegation, and they should be able to rely on the general allegation to assert any theory it might encompass.

8

*Id.*; Mem. P. & A. at 6.  But plaintiffs' general allegation here of "contaminated water originating from parcels where no farming occurs" does not put defendants on notice of their theory based on toxic sediment that wind and water from various sources might form.  Plaintiffs essentially concede the complaint does not put defendants on notice of this seepage and sediment theory by citing an expert report disclosed nearly two years after their amended complaint as providing the requisite notice of the theory.  Reply at 5 (citing Expert Report of Steven R. Bond, ECF No. 104-1 (filed Aug. 28, 2015)).  But it is the operative complaint that must adequately notify defendants of plaintiffs' claims.  *See Pickern*, 457 F.3d at 969 (although plaintiff provided preliminary site report during settlement negotiations, it was not incorporated into the complaint and did not give defendants notice of allegations); *see also Navajo Nation*, 535 F.3d at 1080; *Trishan Air*, 635 F.3d at 435.  As in *Pickern*, 457 F.3d at 969, plaintiffs here have also not timely moved to amend the complaint; the court recently denied plaintiffs' motion to amend the complaint because they did not show good cause.  2017 Order at 9; *cf. Pickern v. Pier 1 Imports (U.S.), Inc.*, 339 F. Supp. 2d 1081, 1089, 1089 n.5 (E.D. Cal. 2004), *aff'd* 457 F.3d 963 (9th Cir. 2006) ("[P]laintiff has not sought to amend the complaint to include [the new factual allegations] . . . .  Nor would the court grant leave to amend at this late stage in the proceeding as plaintiff has not demonstrated good cause.").

    In sum, plaintiffs have not shown how they "g[a]ve the defendant[s] fair notice of what the plaintiff[s]' claim is and the grounds upon which it rests."  *Pickern*, 457 F.3d at 968 (quoting *Swierkiewicz*, 534 U.S. at 512).  After reviewing the record, the court does not have a "definite and firm conviction that a mistake has been committed."  *Smith*, 727 F.3d at 955.

  C. <u>Conclusion</u>

    The court did not clearly err when it concluded the operative complaint did not encompass plaintiffs' sediment and seepage theory and did not give defendants fair notice of that theory.  As a result, the court did not commit clear error by striking it at summary judgment.  Accordingly, the court DENIES plaintiffs' motion to reconsider.  The court need not address its alternative determination that plaintiffs' theory, even if not stricken, would not survive summary judgment.

This order resolves ECF No. 165.

IT IS SO ORDERED.

DATED: August 8, 2017.

_____
UNITED STATES DISTRICT JUDGE