UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS; et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD R. GLASER, et al., <br><br> Defendants. | No. 2:11-cv-02980-KJM-CKD <br><br> ORDER |

This Clean Water Act enforcement action is before the court on remand from the Ninth Circuit, after the Circuit reversed this court's entry of judgment for defendants. *See* Ninth Circuit Opinion, ECF No. 188. On March 6, 2020, the court held a status conference to discuss how to proceed following the remand. ECF No. 194. The parties agreed that resolution of the remaining issues requires a second round of summary judgment motions. Defendants argued further discovery is needed, while plaintiffs argued further discovery will cause unnecessary delay. The court granted defendants' request to conduct limited further discovery and ordered the parties to meet and confer regarding the scope of that discovery and file a joint status report on the results of that effort, which the parties have done. *See* Joint Status Report (JSR), ECF No. 196; Minutes, ECF No. 194. After considering the parties' positions on the matter, the court will

allow the limited discovery outlined below, subject to the parties' exhaustion of additional meet and confer efforts.

I.   Meet and Confer

Before any discovery is taken, the parties are directed to conclude further meet and confer efforts within 14 days of this order to reach any stipulations possible regarding (1) the status of the San Luis Drain as a commingled or segregated drain, and (2) whether an NPDES permit has been required for commingled discharges since at least 2006.  Any stipulations the parties reach shall be memorialized and filed with the court within 21 days of this order.

Within 21 days of this order, the parties are further directed to conclude meet and confer efforts with the goal of producing an agreed-upon list comprising "the potential universe of the types of lands or activities that could have contributed to discharges."  JSR at 7.  The parties shall notify the court of the results of this meet and confer within 7 days of its completion, filing by then any stipulation they have reached in this respect.  This list will serve to cabin the limited discovery, as outlined below.

II.  Discovery Plan

Because the parties are effectively re-litigating the original summary judgment motions, this time with the insight of the Ninth Circuit's remand opinion, the court limits any supplemental discovery to the timeframe that was at issue in the original summary judgment motion practice.  As such, all discovery shall be limited to the time period September 10, 2006 to July 31, 2015, the date fact discovery originally closed in this case, with the exception of any discovery for the purpose of determining attorneys' fees and costs, for which the relevant time period is ongoing.  Discovery is further allowed as follows.

A.   Plaintiffs' Position

Plaintiffs identify the key issue for which further discovery is appropriate as whether defendants can meet their burden of showing all of the contaminated waters discharged from the San Luis Drain "since September 10, 2006 (five years and 60 days before Plaintiffs filed this action on November 9, 2011; *see Sierra Club v. Chevron U.S.A.*, 834 F.2d 1517, 1525 (9th Cir. 1987)), originated solely from 'return flows from irrigated agriculture.'"  JSR at 3 (quoting

2

Ninth Circuit Opinion at 1085).  To that end, plaintiffs propose discovery to ascertain defendants' contentions and supporting evidence on the following issues:

    a.    Did defendants discharge pollutants from their San Luis Drain to Mud Slough without an NPDES permit at any time subsequent to September 10, 2006?

    b.    If the answer to question "a" is yes, then have defendants carried their burden to show all such "discharges were composed entirely of return flows from irrigated agriculture"?

    c.    If the answer to question "b" is no, then on how many days since September 10, 2006 did defendants discharge pollutants from their San Luis Drain to Mud Slough without an NPDES permit?

    d.    What is the appropriate remedy, including injunctive relief and civil penalty, to impose on defendants for their violation of the Clean Water Act's discharge prohibition?

    e.    Are plaintiffs entitled to recover their reasonable attorney's fees and litigation costs under 33 U.S.C. § 1365(d) for their successful prosecution of this action?

    f.    If the answer to question "e" is yes, then what is the amount of plaintiffs' reasonable attorney's fees and litigation costs to be awarded in this action?

*See* JSR at 4.

Furthermore, plaintiffs would include in the discovery they propound on defendants "the questions whether Defendants (1) contend that all of the pollutants discharged into Mud Slough during this period were entirely from irrigated farmland, and (2) if so, then Defendants should state all facts and produce all evidence that proves that fact." *Id.* at 5.

The court GRANTS plaintiffs the right to pursue these discovery requests, once the discovery period reopens as provided for above.

/////

/////

/////

/////

B. Defendants' Position

Defendants concede there "is no dispute that Defendants' discharges occurred without an NPDES permit." *Id.* at 6. Defendants appear to agree with plaintiffs' characterization of the key remaining issue for which discovery is appropriate; "[t]he purpose of Defendants' requested discovery," they explain, "is to pinpoint the discharges Plaintiffs argue eliminate the availability of the NPDES exemption or exclusion." *Id.* at 8. To that end, defendants request discovery "into specific categories of lands Plaintiffs contend contributed to discharges," as well as

> the evidence [plaintiffs] have concerning the existence and location of those lands and their contribution to an alleged nonexempt discharge, information about the processes by which those lands caused contributions, and information as to whether those lands or the contributions were related to crop production or otherwise exempt or excluded from NPDES permitting.

*Id.* at 7.

Defendants' discovery requests are GRANTED, with two caveats. First, plaintiffs shall be permitted to conduct reciprocal discovery within the parameters of that defendants conduct. Second, all parties' discovery on these issues shall be limited to the universe of lands and activities to be identified by the parties during the meet and confer described above and memorialized with this court within 7 days of that meet and confer. If the parties are unable to stipulate to a joint list, they may submit competing versions and the court will resolve the dispute.

III. PRETRIAL SCHEDULE

The parties do not propose a schedule for discovery in their joint status report. Though the scope of discovery is narrow, as described below, the court recognizes the delay that will likely be caused by the current global public health crisis occasioned by COVID-19, which has spread exponentially since the court's status conference with the parties. Accordingly, the court sets the close of fact discovery as **September 25, 2020**. If supplemental expert discovery is necessary, initial supplemental expert opinions shall be disclosed **October 30, 2020**, rebuttal expert opinions shall be disclosed **November 20, 2020**, and supplemental expert discovery will close **December 18, 2020**. Dispositive motions shall be heard no later than **January 22, 2021**.

|   |   |
|---|---|
| 1 | The parties are reminded that, as provided by Rule 16(b) of the Federal Rules of |
| 2 | Civil Procedure, this Status (Pretrial Scheduling) Order shall not be modified except by leave of |
| 3 | court upon a showing of good cause. Agreement of the parties by stipulation alone does not |
| 4 | constitute good cause. Except in extraordinary circumstances, unavailability of witnesses or |
| 5 | counsel does not constitute good cause. |
| 6 | The magistrate judge assigned to this case is authorized to modify only the |
| 7 | discovery dates shown above to the extent any such modification does not impact the balance of |
| 8 | the schedule of the case. |
| 9 | All provisions of the court's initial pretrial scheduling order not modified by this |
| 10 | order are incorporated herein and remain in full force and effect. *See* ECF No. 100. |
| 11 | This schedule will become final without further order of the court unless |
| 12 | objections are filed within fourteen (14) calendar days of service of this Order. |
| 13 | IT IS SO ORDERED. |
| 14 | DATED: April 6, 2020. |

_____
CHIEF UNITED STATES DISTRICT JUDGE