1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PACIFIC COAST FEDERATION OF          No.  2:11-cv-02980-KJM-CKD
     FISHERMEN'S ASSOCIATIONS, et al.,
12
                    Plaintiffs,
13                                        ORDER
            v.
14
     DONALD R. GLASER, et al.,
15
                    Defendants.
16

17

18          Grassland Water District (GWD) moves to intervene as a defendant in this Clean

19   Water Act enforcement action.  *See* Mot. to Intervene (Mot.), ECF No. 193; Reply, ECF No. 200.

20   Plaintiffs oppose the motion, ECF No. 199; defendant San Luis & Delta-Mendota Water

21   Authority (the Authority) does not, ECF No. 198.[1]  The court heard the motion by

22   videoconference, in light of the novel coronavirus pandemic, on April 24, 2020.  Stephan Volker

23   appeared for plaintiffs; Ellen Wehr appeared for GWD; Martin McDermott appeared for the

24   federal defendants; and Eric Buescher, Gabriel Delgado, and Rebecca Akroyd appeared for the

25   Authority.  Hr'g Minutes, ECF No. 202.  The motion is granted.

26

27
            [1] Donald Glaser and the U.S. Bureau of Reclamation (the federal defendants) have filed
28   neither an opposition nor a statement of nonopposition.

                                   1

1     I.        <u>BACKGROUND</u>

2                  Plaintiffs are a collection of individuals, citizens' groups and corporations who

3 each depend on California's oceans, rivers and fisheries. First Am. Compl. (FAC), ECF No. 71

4 ¶¶ 11–16. The U.S. Bureau of Reclamation is a federal agency that, broadly speaking, manages

5 water resources. *Id.* ¶ 18. The Authority serves member agencies, which rely upon water

6 exported by the Central Valley Project from the San Francisco Bay Delta. *Id.* ¶ 19. The

7 defendants manage the Grassland Bypass Project, which "collects and discharges polluted

8 groundwater from tile drainage systems" and "water that has been used for irrigation purposes."

9 *Id.* ¶¶ 21–22. GWD is a public agency that provides water to wetlands and wildlife refuges

10 within the Grasslands Ecological Area in Merced County, California. Mot. at 7–8.

11                  Plaintiffs allege defendants violated the Clean Water Act, 33 U.S.C. § 1311(a), by

12 discharging pollutants into the San Francisco Bay Delta without a National Pollutant Discharge

13 Elimination System (NPDES) permit. Compl., ECF No. 2. Their allegations address the San

14 Luis Unit of the Grassland Bypass Project, which includes canals such as the San Luis Drain.

15 FAC ¶¶ 23–24. According to the complaint, the San Luis Drain "discharge[s] contaminated

16 groundwater to Mud Slough and the San Joaquin River" and includes redirected pollutants, which

17 would normally have discharged into freshwater channels and wetlands. *Id.* Defendants argue

18 these discharges are exempt from an NDPES permit because they are composed of "discharges

19 composed entirely of return flows from irrigated agriculture." 33 U.S.C. § 1342(l)(1); *see also*

20 Joint Status Report, ECF No. 196, at 5.

21                  Nearly four years of motion practice followed the filing of plaintiffs' original

22 complaint, including cross-motions for summary judgment. *See* ECF Nos. 71, 87, 137, 138, 162,

23 175. The court's order on the cross-motions left only one category of claims in the case, which

24 the parties stipulated to dismiss to allow an appeal. Stip. of Dismissal, ECF No. 182, at 2–3. The

25 Ninth Circuit reversed and remanded. *See Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945

26 F.3d 1076, 1078 (9th Cir. 2019). Among other holdings, the Ninth Circuit determined that

27 plaintiffs should have been permitted to pursue a theory of liability this court had stricken,

28 namely "that Defendants violated the [Clean Water Act] because the [San Luis] Drain picked up

1   seepage from non-irrigated land on its way to the Mud Slough, and because the Drain discharged

2   pollutants from seepage and sediment within the Drain." *Id.* at 1081.  For simplicity, the court

3   refers to this theory of liability as the "seepage" theory.

4          After the Ninth Circuit issued its opinion, GWD moved before the Circuit for

5   leave to file an amicus curiae brief in support of defendants' motion for a panel rehearing.  Ortega

6   Decl. Ex. 1, ECF No. 193-3.  It explained the Drain conveys water through the GWD but is

7   separate from GWD's own "water delivery channels"; the Drain merely "bypass[es] water"

8   through the GWD that "does not meet water quality requirements for application to wetland

9   habitat, from the Grassland Drainage Area to Mud Slough."  Ortega Decl., ECF No. 193-3, ¶ 6.

10  GWD asked the Circuit for permission to argue that "[n]either the pleadings nor [ plaintiffs']

11  responses to discovery gave any indication that this case was intended to address discharges

12  originating from the Grasslands Drainage Area," which it interpreted the Ninth Circuit's opinion

13  to permit on remand.  *Id.* at 5.  GWD took the position the Ninth Circuit's order effectively

14  "expand[ed] the scope of the case,—and potential Clean Water Act liability—well beyond the

15  area and activities described in the pleadings, to areas outside of the Grassland Drainage Area that

16  include the [GWD] and other wetlands within the Grassland Ecological Area."  *Id.*  In short,

17  GWD asserted that its water supplies "became part of the property and transaction that are the

18  subject of this case" after the Ninth Circuit's decision.  *Id.* at 7.  It thus asked the Circuit to "limit

19  its decision to those discharges that originate in the Grassland Drainage Area."  *Id.* at 6.

20         The Ninth Circuit permitted GWD to file its amicus brief but did not modify its

21  opinion as GWD requested.  *See* 945 F.3d at 1079 (Order).  It then remanded the case to this

22  court, at which point GWD moved to intervene.  ECF No. 193.

23  II.    LEGAL STANDARD

24         When a nonparty wishes to become a party in a lawsuit, that entity may move to

25  intervene under Rule 24 of the Federal Rules of Civil Procedure.  Rule 24 permits two types of

26  intervention: intervention as of right and permissive intervention.  An entity moving to intervene

27  as of right, as GWD does here, has the burden to show (1) the motion is timely, (2) it has a

28  "significant protectable interest in the property or transaction" in question, (3) "the disposition of

3

1    the action may, as a practical matter, impair or impede" the entity in protecting that interest, and

2    (4) the existing parties would not adequately represent the entity.  *Citizens for Balanced Use v.*

3    *Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  These requirements are broadly

4    interpreted in favor of intervention.  *Id.*

5    III.    DISCUSSION

6             A.    Timeliness

7                   Courts consider three factors when deciding whether a motion to intervene is

8    timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice

9    to other parties; and (3) the reason for and length of [any] delay." *League of United Latin Am.*

10   *Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).  Delays are measured from the time

11   when a proposed intervenor "should have been aware that [its] interests would not be adequately

12   protected by the existing parties."  *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

13                   1.    Stage of Proceedings

14                   GWD moved to intervene here after many years of hard-fought litigation and

15   discovery, after even an appeal and remand.  The case could now be considered to have reached a

16   stage late in the game. But GWD argues the Ninth Circuit's opinion changed the circumstances of

17   this action.  Changes in circumstances weigh in favor of a motion to intervene.  *See, e.g.*, *United*

18   *States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (collecting authority).  When "a

19   change of circumstances occurs, and that change is the 'major reason' for the motion to intervene,

20   the stage of proceedings factor should be analyzed by reference to the change in circumstances,

21   and not the commencement of the litigation."  *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d

22   843, 854 (9th Cir. 2016).

23                   This court agrees the circumstances here have changed, as relevant to GWD's

24   motion.  Before the Ninth Circuit's opinion, the existing defendants had successfully argued the

25   seepage theory lacked support in the pleadings and record.  *See* Order, ECF No. 181.  The motion

26   practice here thus focused on whether discharges from agricultural land exempted the Grassland

27   Bypass Project from an NDPES permit.  *See* Order on Reconsideration, ECF No. 175, at 2–4.

28   The Ninth Circuit issued its opinion and clarified the scope of plaintiff's claims to encompass

4

1   non-agricultural land outside of the drainage area of the Grassland Bypass Project, land that

2   includes the GWD; this land is the "non-irrigated land" cited in the Ninth Circuit's opinion.  *See*

3   945 F.3d at 1087.  In the opinion, notably, the Ninth Circuit "agree[d] with Defendants that

4   Plaintiffs' complaint did not specifically allege their seepage and sediment theories of liability,"

5   *id.*, but found defendants were given fair notice of these theories because plaintiffs' complaint

6   alleged "that the Drain discharged 'polluted groundwater … originating from parcels where no

7   farming occurs because, for instance, these parcels have been fallowed or retired from agricultural

8   use.'"  *Id.* (quoting FAC ¶ 41).  GWD does not control land within the drainage area and did not

9   sign the agreement covering the costs "related to the Grassland Bypass Project, including the cost

10  of defending this litigation."  Mot. at 14.  In short, "the litigation is entering a new stage," *State of*

11  *Oregon*, 745 F.2d 550, 552 (9th Cir. 1984), and GWD did not delay once the Ninth Circuit issued

12  its opinion and the case was remanded, triggering that new stage.

13              2.       Reason for and Length of Delay

14          GWD's actions in this case are similar to those of the successful intervenor in

15  *California v. Health and Human Services*, 330 F.R.D. 248 (N.D. Cal. 2019).  Oregon was not a

16  party in that case originally, in which the district court had issued a nationwide injunction; as a

17  result, Oregon's "asserted interests were initially protected by the existing parties."  *Id.* at 253.

18  But the defendants appealed, and the Ninth Circuit restricted the injunction to the plaintiff states

19  only.  *Id.*  Oregon then moved to intervene, and the court agreed under the circumstances it had

20  not delayed.  *Id.*  So too here: until the Ninth Circuit's decision, GWD similarly understood this

21  dispute did not apply to land under its control; now it does.

22          Plaintiffs argue GWD could and should have attempted to intervene much earlier

23  because it knew that seepage from its land flows into the San Luis Drain.  *See* Opp'n at 11–13.

24  That argument relies on an incorrect test for timeliness.  When GWD became aware of the alleged

25  environmental problem is irrelevant; the relevant question is when GWD realized its interests

26  here were not protected.  *See Smith*, 194 F.3d at 1052.  Nor can plaintiffs succeed by arguing that

27  GWD had notice from plaintiffs' complaint that a seepage theory was at issue in light of what the

28  Ninth Circuit has now determined.  The Circuit construed the complaint and concluded only that

5

1    the existing defendants had notice of seepage claims, as well as access to discovery documents

2    and testimony, records that were not necessarily disclosed on the docket of this action.  *See* 945

3    F.3d at 1087.  The Circuit did not find that third parties should also have been on notice, and this

4    court cannot reach that conclusion now.  The court had excluded the claims GWD now contends

5    will implicate its interests.  Holding that GWD should have intervened sooner would effectively

6    require it, and others similarly situated, to constantly troll the dockets of every case potentially

7    relevant to its interests and seek early intervention in order to preserve rights in the event a future

8    court decision may affect those rights.

9                            3.    Prejudice

10           Prejudice is the final timeliness factor to consider.  "[T]he only 'prejudice' that is

11   relevant under this factor is that which flows from a prospective intervenor's failure to intervene

12   after he knew, or reasonably should have known, that his interests were not being adequately

13   represented—and not from the fact that including another party in the case might make resolution

14   more 'difficult[].'"  *Smith,* 830 F.3d at 857 (alterations in original) (quoting *State of Oregon*, 745

15   F.3d at 552–53).

16           Here, the plaintiffs will not suffer undue prejudice if GWD is permitted to

17   intervene.  It may be that GWD's participation would make ultimate resolution more difficult or

18   costly to obtain here, but if so, that would be so even if GWD has intervened years ago.  There is

19   no reason to believe that allowing GWD to become a defendant now will materially alter the

20   course of future motion practice in what is likely to be a continuing hotly litigated case, or

21   threaten the success of protracted negotiations or a settlement if the parties head in that direction.

22   *Cf. Cty. of Orange v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986).  GWD's delay is thus not the

23   cause of any prejudice, even if its presence in the case means more heavy lifting for plaintiffs.

24   That is not a reason to keep it out of the case.  *See Smith*, 830 F.3d at 857–58 (overturning a

25   district court's finding of prejudice because it was "untethered to any prejudice which was caused

26   by Appellants' delay" and "would be true regardless of when the intervention occurred.").

27           Even if GWD's addition does make resolution more "difficult," that also is not

28   dispositive.  When GWD sought to intervene, it did not "seek to alter any of the Court's current

                                                    6

1    deadlines (briefing or otherwise)." Mot. at 10–11. It is likely now that scheduling changes are

2    necessary, but that was a result of factors beyond GWD's control, a global pandemic chief among

3    them, in addition to this court's heavy caseload. While plaintiffs also suggest GWD's

4    intervention is a tactic designed to overwhelm plaintiffs' lawyer's "tiny, pro bono firm," Opp'n at

5    20, GWD itself is no behemoth. It is a public agency represented by one in-house counsel. Reply

6    at 13. In any event, the threat of a resourceful adversary also is the same danger now that it

7    would have been much earlier in the litigation.

8         In sum, the court finds "no basis in the record for holding that the intervention

9    would prejudice the existing parties because of the passage of time." *State of Oregon*, 745 F.3d at

10   553. GWD's motion is timely under the circumstances.

11       B.    Significantly Protectable Interest and Practical Impairment of that Interest

12        An interest is a significant protectable interest if (1) it is protectable under some

13   law and (2) it is related to the claims at issue. *Citizens for Balanced Use*, 647 F.3d at 897. The

14   interest need not be a specific legal or equitable interest. *Id.* GWD must demonstrate the

15   disposition of the action in its absence would impair its interests in a practical sense. Fed. R. Civ.

16   P. 24(a)(2).

17        Here, California Water Code sections 35407 and 35408 authorize GWD to

18   intervene in any legal action that involves or affects water or water rights within the water

19   district's boundaries. Cal. Water Code § 35407 ("A district may commence and maintain any

20   actions and proceedings to carry out its purposes or protect its interests and may defend any

21   action or proceeding brought against it."); *id.* § 35408 ("A district may commence, maintain,

22   intervene in, compromise and assume the costs of any action or proceeding involving or affecting

23   the ownership or use of waters or water rights within the district used or useful for any purpose of

24   the district or a benefit to any land."). Not only does the California Water Code protect GWD's

25   interest; that interest also is implicated by plaintiffs' seepage claims. Plaintiffs argue that seepage

26   into the San Luis Drain from non-agricultural lands adjacent to the San Luis Drain can be the

27   basis for liability, Joint Status Report at 7; these lands, including those outside the drainage area,

28   lie within the Grassland Water District, Ortega Decl. ¶ 8. GWD reasonably appears to have an

7

1    interest in seeking to persuade the court that seepage from its land falls under exceptions for "the

2    Clean Water Act's express and unqualified exclusion of agricultural stormwater and return flows

3    in the Clean Water Act's definition of a 'point source.'" Ortega Decl. Ex. 1 at 23.  Plaintiffs do

4    not contend otherwise.

5         When a litigant has a significant protectable interest, it is easy to see why litigation

6    in its absence may impair its interests, as is the case here.  *See California ex rel. Lockyer v.*

7    *United States*, 450 F.3d 436, 442 (9th Cir. 2006).  If this action is litigated without GWD, GWD

8    would not be entitled to seek discovery about its potential liability, it could not defend itself in

9    dispositive motion practice and at trial, and it might find itself bound by an order or judgment in

10   affecting waters originating on its land.  *See* Barajas Decl. ECF No. 193-4, ¶ 9.  In particular,

11   GWD might be required to comply with NDPES permitting rules in the future.  Mot. at 5, 8;

12   Reply at 8.

13        In sum, GWD has shown a significantly protectable interest related to this Clean

14   Water Act enforcement action and has also demonstrated that interest could be impaired in its

15   absence.

16        C.    Inadequacy of Representation

17        The "burden of showing inadequacy of representation is 'minimal' and is

18   satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate."

19   *Citizens for Balanced Use*, 647 F.3d at 898 (citing *Arakaki v. Cayetano*, 324 F. 3d 1078, 1086

20   (9th Cir. 2003)); *accord Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

21   The court examines "(1) whether the interest of a present party is such that it will undoubtedly

22   make all of a proposed intervenor's arguments; (2) whether the present party is capable and

23   willing to make such arguments; and (3) whether a proposed intervenor would offer any

24   necessary elements to the proceeding that other parties would neglect.  *Citizens for Balanced Use*,

25   647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086).

26        GWD's interests here diverge from those of the existing defendants.  The federal

27   defendants are clearly not adequate representatives.  The Bureau built and manages the San Luis

28   Drain, whereas GWD aims to provide water to and support the wetlands around the Drain.  There

8

1    is no assurance the federal government will make all of GWD's arguments or that its connection

2    to the Drain makes it capable of advancing arguments about wetlands.  Mot. at 14.

3             The Authority's interests present a more challenging question, but only at first

4    glance: GWD is in fact a member of the Authority.  But like the federal defendants, the Authority

5    is a named defendant because it "operates the [Grassland Bypass] Project."  FAC ¶ 19.  GWD's

6    membership in the Authority does not relate to the Grassland Bypass Project.  GWD "is neither

7    an operator nor a user of the Project facilities"; GWD does not pay the Authority for the

8    agricultural drainage services of the Project; and GWD is not a signatory to the Grassland Basin

9    Drainage Management Activity Agreement.  Mot. at 14; Barajas Decl. ¶¶ 6-8; Reply at 11.  Like

10   the federal defendants, the Authority is unlikely to make the arguments GWD would make or

11   make those arguments capably so as to vindicate GWD's interests.

12            Plaintiffs do not confront these differences directly, but rather focus on the

13   Grassland Basin Drainage Management Activity Agreement, claiming it is irrelevant that GWD is

14   not a signatory.  They argue the Authority represents all of GWD's members, not just those who

15   signed the agreement, and contend "it would not benefit the Authority . . . to undermine the

16   interests of one of its members to protect those of another."  Opp'n at 19.  These arguments do

17   not withstand scrutiny.  Although the Authority might not benefit from any undermining of

18   GWD's interests, the distinction between their interests remains, at least with respect to operation

19   of the San Luis Drain.  Agricultural members of the Authority, for example, may very well make

20   arguments about seepage liability that conflict directly with GWD's wetlands conservation goals.

21   Whereas plaintiffs' claims of discharges from highways, residences and sediment affect the

22   Authority's farming and drainage members, the seepage theory implicates GWD as a wetlands

23   water manager.

24            The court also is not persuaded that GWD's motion should be denied, as plaintiffs

25   argue, because GWD does not "provide any evidence that the Authority lacks . . . expertise"

26   about wetland management.  Opp'n at 20.  But the Executive Director of the Authority, for

27   example, does aver that "Clean Water Act regulation of wetland water deliveries or alleged

28   discharges is not an issue that the SLDMWA has historically addressed."  Barajas Decl. ¶ 9.  Mr.

9

1  Barajas also avers there is not "an agreement in place to cover the SLDMWA's costs of doing

2  so." *Id.*  The Grassland Basin Drainage Management Activity Agreement is itself evidence:

3  although GWD is a member of the Authority, it was not a signatory to the Agreement.

4  GWD has shown that neither the federal defendants nor the Authority would

5  adequately represent its interests in this litigation.

6  IV.  CONCLUSION

7  GWD's motion to intervene as of right is GRANTED.  Because its motion is

8  granted on this basis, the court does not reach GWD's alternative request to intervene

9  permissively under Rule 24(b).

10  The parties, including GWD, are directed to submit a joint report within twenty-

11  one (21) days addressing the need for additional discovery, if any, and dates to be set in a new

12  pretrial scheduling order.

13  This order resolves ECF No. 193.

14  IT IS SO ORDERED.

15  DATED:  October 13, 2020.

18  CHIEF UNITED STATES DISTRICT JUDGE